1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 San Francisco Division

11 KAYDEN THUY NGUYEN,

Case No. 3:16-cv-01665-LB

12 Plaintiff,

**ORDER GRANTING PLAINTIFF'S**
13 v.
**MOTION FOR SUMMARY JUDGMENT**
**AND DENYING DEFENDANT'S**
14 NANCY A. BERRYHILL,
**MOTION FOR SUMMARY JUDGMENT**

15 Defendant.
ECF Nos. 13 & 16

16

17 **INTRODUCTION**

18     Plaintiff Kayden Thuy Nguyen moves for summary judgment, seeking judicial review of the

19 Social Security Administration's decision to deny her disability benefits for her claimed

20 disabilities of degenerative disc disease of the cervical and lumbar spine as well as asthma,

21 depression, and anxiety.[1] The Administrative Law Judge ("ALJ") found that Ms. Nguyen had the

22 residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with

23

24

25

26

27 ───────────────

[1] Motion for Summary Judgment – ECF No. 13 at 6–22. Record citations refer to the Electronic Case
28 File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

limitations, and was not disabled.[2] The Commissioner opposes Ms. Nguyen's summary-judgment motion and cross-moves for summary judgment.[3]

Under Civil Local Rule 16-5, the matter is deemed submitted for decision by this court without oral argument. All parties have consented to magistrate jurisdiction.[4] The court grants the plaintiff's motion and denies the Commissioner's cross-motion and remands for further proceedings.

**STATEMENT**

**1. Procedural History**

Ms. Nguyen filed her initial disability claim on January 11, 2013, alleging disability beginning December 29, 2011.[5] The Social Security Administration ("SSA") stated that Ms. Nguyen's disability was not severe enough to keep her from working and denied her claim.[6] On December 9, 2013, Ms. Nguyen requested reconsideration, but the SSA determined that the initial decision was correct.[7] Ms. Nguyen appealed the SSA's decision and requested a hearing before the ALJ.[8]

The ALJ held the hearing on October 3, 2014, in San Francisco, California.[9] Ms. Nguyen attended the hearing with her attorney Katherine Siegfried.[10] ALJ Catherine R. Lazuran and vocational expert Corinne Porter also attended the hearing, and Ms. Nguyen's brother Kenneth Nguyen attended and testified as a witness.[11] The ALJ found that Ms. Nguyen was not disabled

---

[2] AR 39. Administrative Record ("AR") citations refer to the page numbers in the bottom right hand corner of the Administrative Record.

[3] Cross-Motion for Summary Judgment – ECF No. 16.

[4] ECF Nos. 2 & 9.

[5] AR 102.

[6] AR 121.

[7] AR 125.

[8] AR 134.

[9] AR 49.

[10] AR 47.

[11] AR 47, 82.

United States District Court
Northern District of California

during the applicable disability period of December 29, 2011, to January 28, 2015, the date of the ALJ's opinion.[12]

Ms. Nguyen requested review of the ALJ's decision by the Appeals Council,[13] which denied her request for review.[14] After receiving an extension of time to file a federal suit, Ms. Nguyen sought judicial review of the ALJ's decision[15] and now moves for summary judgment.[16] The Commissioner answered the complaint and cross-moves for summary judgment.[17]

## 2. Summary of Records and Administrative Filings

### 2.1 Records

#### 2.1.1 Treatment Records Regarding Degenerative Disc Disease[18]

Ms. Nguyen was hospitalized at Kaiser from January 9 to 16, 2012, for "lower back pain" with "uncontrolled symptoms," with mobility needs of "[m]ust be allowed to use a walker, wheelchair as directed."[19] Her status was "off work."[20] An MRI showed a bulging disc at L4–L5 and central bulging at C5–C6 and C6–C7.[21] Her diagnosis was intervertebral disc disorder and myelopathy in her lumbar spine.[22] On January 16, one of her treating doctors, Dr. Chan, summarized her diagnoses,[23] noted the drugs she had received (including empiric steroids, escalating doses of dilaudid, and valium),[24] and noted that there were "no objective findings to explain her numerous

---

[12] AR 27.

[13] AR 19–23.

[14] AR 6.

[15] ECF Nos. 1, 13.

[16] Id.

[17] ECF No. 16.

[18] AR 268–516, 581–84.

[19] AR 583–84.

[20] Id.

[21] AR 446.

[22] AR 268, 310.

[23] AR 447–48.

[24] AR 447.

symptoms."[25] He was concerned about the possibility of either conversion disorder or secondary gain.[26] He noted Ms. Nguyen's anxiety and fear and her "full on panic attack" before a physical therapy session.[27] She "had a lot of anxiety and fear that she will not be able to walk and [has] not been able to participate very much with PT."[28] He noted her other stressors: "she was engaged in a bad working environment in which she was severely abused (details unknown as she claims to be in litigation at this time);" and she had a death in her close social circle.[29] Dr. Chan also noted that the "psych recommended SSRI for anxiety and scheduled Ativan until SSRI takes effect."[30] Dr. Chan ultimately diagnosed Ms. Nguyen with low back pain, somatization disorder, anxiety disorder, leukocytosis, constipation and asthma.[31] He recommended short-term rehabilitation at a skilled nursing facility.[32]

After her hospitalization at Kaiser, Ms. Nguyen was admitted to Valley House Care Center.[33] She had bladder incontinence, was in a wheelchair, and was at a high risk for falls.[34] Her pain was constant and severe.[35] During her stay, she took medications, including Ativan, oxycodone, Lyrica, Zoloft, Prednisone, and acetaminophen, among others.[36] She continued to experience back pain and spasms.[37] When she was discharged in late January 2012, she had muscle weakness, decrease in balance, gait abnormality, and increased risk for falls; physical therapy was

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] AR 448.

[32] AR 446.

[33] AR 268–326.

[34] AR 272–73.

[35] AR 275.

[36] AR 476–81.

[37] AR 494.

prescribed.[38] Kaiser records showed that from January 29 to February 26, she remained "off work."[39]

In May 2012, as part of a worker's compensation evaluation, Dr. Navani examined Ms. Nguyen, who reported the significant impact of her back pain on her ability to work, perform household chores, drive, walk, concentrate, sleep, and socialize.[40] Dr. Navani identified the disc protrusion in the MRI (described by her as L4–L5) with central canal and bilateral neuro-forminal impingement.[41] She had "an antalgic gait, limited range of motion in her cervical and lumbar spine, and positive straight leg tests at 30 degrees bilaterally."[42] Dr. Navani diagnosed Ms. Nguyen with "[b]ilateral lumbar radiculitis with neurological impairment along the left lower extremity" and "[c]ervical axial pain with neurological impairment along the upper extremity, and cervical, thoracic, and lumbar myofascial pain."[43] Her restrictions were: limited to lifting and carrying only fifteen pounds, and doing limited bending, twisting at the waist, and overhead work.[44] Dr. Navani prescribed Ketoprofen, Prilosec, and acupuncture.[45] Dr. Navani observed that Ms. Nguyen had a normal affect, was making good eye contact, had good judgment, and did not exhibit pressurized speech, flight of ideas, or auditory or visual hallucinations.[46] A physician's assistant affiliated with Dr. Navani, Nadi Sarnevsht, recommended that Ms. Nguyen "continue working with her chiropractor."[47]

In July 2012, Ms. Nguyen consulted with neurologist Dr. Rana, who did not have access to her medical records or MRIs.[48] He noted that Ms. Nguyen presented with chronic lower back pain

---

[38] AR 306.

[39] AR 582–83.

[40] AR 250.

[41] AR 254.

[42] AR 252.

[43] *Id.*

[44] AR 253.

[45] AR 255.

[46] AR 254.

[47] AR 258.

[48] AR 263.

"most probably secondary to her scoliosis" as well as "probably mild degenerative disc disease."[49]
He opined that Ms. Nguyen could sit for six hours with breaks in an eight-hour day, carry ten
pounds frequently and twenty pounds occasionally, and frequently stoop, bend, kneel, crouch and
climb.[50] Ms. Nguyen "has difficulty sitting, standing or walking for more than [two to three] hours
at a stretch" but "[s]he can do all her activities otherwise."[51] Ms. Nguyen was "pleasant,"
"appeared her stated age," and cooperated with the examination.[52] Ms. Nguyen had "mild
scoliosis" and "mild tenderness . . . in her lower back," but her range of motion was "within
normal limits."[53] Ms. Nguyen "walks with [a] somewhat stiff back," but "no limp was noted," and
"no assistive device [was] used."[54]

A February 2013 MRI showed degenerative disc disease at L5–S1, with some facet
schlerosis.[55] An April 2014 X-ray showed intervertebral disc-space narrowing at L5–L6 with
endplate schlerosis and anterior osteophytic activity and facet imbrication at L5–L6; this was
diagnosed as Grade I spondylolisthesis.[56]

In March 2014, Dr. Han, a doctor of osteopathy, produced a "supplemental medical-legal
evaluation" as part of the worker's compensation process.[57] Dr. Han diagnosed Ms. Nguyen with
lumbosacral degenerative disc disease, lumbar sprain, chronic pain syndrome, and "spasm of
muscle."[58] He believed that her injury was a "recurrence defined as a reappearance of prior
symptoms from a prior injury in the absence of clearly definable injury or trauma."[59] He

---

[49] AR 265.

[50] Id.

[51] AR 263

[52] AR 264.

[53] Id.

[54] Id.

[55] AR 517.

[56] AR 522.

[57] AR 552.

[58] AR 553.

[59] Id.

apportioned 90% of her disability to a non-industrial pre-existing condition and normal degeneration, and 10% to the industrial injury caused by prolonged sitting during her time spent working at Wal-Mart.[60]

Ms. Nguyen's chiropractor treated her from March 2012 to June 2014, three times a week.[61] Some of the events in the treatment records include Dr. Lee's request in September 2013 that Ms. Nguyen be excused from school until October 2 due to extreme pain while sitting and walking.[62] By September 2014, Dr. Lee reported the following in the residual-functional-capacity questionnaire: Ms. Nguyen had clinical signs of back pain with decreased range of motion, could not sit or stand for more than 20 minutes at a time without needing to shift positions, could stand and walk for two hours or less in an eight-hour workday, needed to walk around for periods of time, needed to take breaks, could not lift more than ten pounds, and likely would be absent at least four days a month.[63]

Ms. Nguyen's acupuncturist treated her from June 2012 to September 2014.[64] In the residual-functional-capacity questionnaire, the acupuncturist reported that Ms. Nguyen's symptoms would interfere frequently with Ms. Nguyen's concentration and attention.[65] Based on the acupuncturist's observations, Ms. Nguyen could not stand, walk, or sit for more than two hours in an eight-hour workday, needed to walk around and switch positions at will, needed to take unscheduled breaks during the day, could not lift more than ten pounds, and would be absent at least four days a month because of her symptoms.[66]

---

[60] AR 554.

[61] AR 519, 528–47.

[62] AR 535.

[63] AR 549–51.

[64] AR 587–630.

[65] AR 632.

[66] AR 632–34.

### 2.1.2  Dr. Bill Payne and Dr. J.R. Saphir — DDS Medical Consultants

In July 2013, Disability Determination Services ("DDS") Medical Consultant Dr. Bill Payne examined Ms. Nguyen and reviewed her records.[67] He found that she had severe degenerative disc disease of the lumbar spine; it was severe because it limited her to light work, with no additional limitations (and thus she was not disabled).[68] She had "limited motion of the cervical/lumbar spine," good motor strength, an antalgic gait, and was "able to heel/toe but ha[d] some unsteadiness."[69] In December 2013, DDS Medical Consultant Dr. J.R. Saphir agreed with this assessment.[70]

### 2.1.3  Mental-Health Treatment Records

As discussed above, Ms. Nguyen had some psychological issues in January 2012 when she first had her back issues. She had panic attacks when she was admitted to the hospital; she was prescribed Lorazepam, Lyrica, and Zoloft.[71] Dr. Chan diagnosed her with Somatization Disorder and Anxiety Disorder.[72] Dr. Lam did an assessment at the skilled nursing facility and found depression (manifested by insomnia and sad facial expressions) and anxiety (manifested by the inability to relax).[73]

From March 2014 to September 2014, Ms. Nguyen saw a trauma therapist named Anna Clark weekly, based on a history of sexual assaults directed at her.[74] Ms. Clark is a Marriage and Family Therapist Intern and California State certified Sexual Assault Counselor at Rape Trauma Services: A Center for Healing and Violence Prevention.[75] The following describes Ms. Clark's letter to the

---

[67] AR 102–10.

[68] AR 109.

[69] AR 108.

[70] AR 111–20.

[71] AR 268, 277, 279, 447.

[72] AR 479–83.

[73] AR 320.

[74] AR 559.

[75] *Id.*

SSA regarding Ms. Nguyen. As a result of the sexual assaults, Ms. Nguyen struggles "with strong feelings of anxiety, panic, depression, and anger."[76] She has "intense insomnia, intrusive thoughts, distrust of others, and loss of concentration and focus."[77] The trauma greatly affects her "ability to manage everyday tasks such as work, household responsibilities[,] and inter-personal relationships."[78] "She experiences strong social anxiety and paranoia related to applying for a work position" and working with colleagues and clients.[79] "She experienced workplace bullying in the past due to her trauma," had "great anxiety and paranoia that it [would] happen again," and is easily triggered and "can experience intense anxiety[] when she is reminded of her trauma or has to explain it."[80] She felt she was unable "to protect herself from sexual harassment or workplace violations [for] fear of retribution" or retaliation for standing up for herself, which she experienced in the past.[81] "Experiencing workplace stress would most likely be very overwhelming. . . [because] her daily level of stress is already high"; she probably would "have difficulty concentrating and focusing on her work[] due to [her] intense anxiety . . . in social situations.[82] Treatment notes reflect that Ms. Nguyen "presents with symptoms of sadness often," had problems trusting others, and was dealing with feelings of humiliation and rejection.[83] While Ms. Nguyen was "[e]ngaged in the session," her "affect matches [the] subject matter."[84] The notes refer repeatedly to Ms. Nguyen's suffering from depression, anger, anxiety, humiliation, and nightmares.[85]

---

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] AR 561.

[84] *Id.*

[85] AR 560–80.

United States District Court
Northern District of California

In September 2014, in a residual-functional-capacity questionnaire, the chiropractor Dr. Lee reported that depression was contributing to Ms. Nguyen's symptoms but noted that she could tolerate "low stress jobs."[86] Also in September 2014, the acupuncturist Ms. Nakamura opined that depression and anxiety contributed to Ms. Nguyen's physical symptoms related to her herniated disc.[87]

### 2.2  Ms. Nguyen's Testimony

Ms. Nguyen testified at the October 3, 2014 hearing.[88]

The ALJ examined her first, asking general background questions and questions about Ms. Nguyen's educational background and work history.[89] Ms. Nguyen testified that she completed a total of three semesters of community college, where she studied fashion merchandising.[90] She worked as a waitress from 2005 to 2006.[91] From June 2007 to February 2008, she worked as an applied behavior analysis therapist, and from May 2009 to May 2010 she worked for Virgin America as a flight attendant.[92] She was able to lift between 25 and 70 pounds during this period.[93] She then worked as a Network Operation Center Analyst for Walmart.[94] Ms. Nguyen recently spent four months working at Bridal Project, working 15 to 25 hours a week and lifting at most 15 pounds.[95] Since December 2011, she volunteered at her church.[96] At the time of the hearing, she

---

[86] AR 548–49.

[87] AR 632.

[88] AR 49.

[89] AR 53.

[90] *Id.*

[91] AR 58.

[92] AR 56.

[93] *Id.*

[94] AR 54.

[95] AR 60.

[96] AR 61.

worked 15 to 20 hours a week as a nanny caring for three children, ages four, six, and seven.[97] The most she lifted at work was 15 pounds.[98]

The ALJ asked Ms. Nguyen if she was currently capable of performing any kind of work.[99] Ms. Nguyen responded that she was working as a nanny but could not do the job fulltime and similarly could not do the fulltime work she did at Bridal Project.[100] Her inability to work began in December 2011, and her health "comes and goes."[101]

The ALJ asked Ms. Nguyen about the medications she had taken since December 2011.[102] Ms. Nguyen listed codeine, Valista Pharmaceutical Medicines, Adderall, and Albuterol, and she mentioned others given to her at Kaiser but could not remember the names.[103] The ALJ asked about negative side effects from any medications, and Ms. Nguyen responded that she stopped taking Vicodin because it gave her a rash.[104] Ms. Nguyen uses melatonin as a sleep aid.[105]

The ALJ asked about Ms. Nguyen's history of counseling.[106] Ms. Nguyen testified that she had "a lot of anxiety" and gets "really stressed around people."[107] She then became upset, and the ALJ asked her to try to calm down.[108] Ms. Nguyen said that since she lost her job at Walmart, she tried to avoid people.[109]

_____

[97] AR 53.

[98] *Id.*

[99] AR 62.

[100] AR 63.

[101] AR 64.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] AR 65–66.

[106] AR 66.

[107] *Id.*

[108] *Id.*

[109] AR 67.

United States District Court
Northern District of California

The ALJ asked about Ms. Nguyen's general living situation and ability to care for herself.[110] Ms. Nguyen said that she had a limited ability to do household chores, had no permanent home, and stayed at her brother's and boyfriend's houses.[111] She typically grocery shops once every two weeks with help from another person, but was capable of going by herself.[112] She has been exercising since 2011 and tries to swim three times per week.[113] She used to attend church but stopped going about three months prior due to anxiety.[114] Ms. Nguyen needed help doing laundry, specifically, moving wet, heavy laundry from the washer to the dryer.[115]

The ALJ asked if Ms. Nguyen had done any traveling since December 2011.[116] Ms. Nguyen flew to Laguna Beach for a wedding a few weeks before and took a two-day trip to San Diego to visit her best friend a few weeks before that.[117]

The ALJ asked Ms. Nguyen if she had any hobbies.[118] She said that she liked to draw, which was therapeutic for her when she was stressed.[119] She uses a computer for about an hour every day but rarely watched television.[120] She testified that she had not had money to pay bills since 2011, and was not capable of doing any of the types of work that she had done before December 2011, including work as a bridal consultant.[121]

Ms. Nguyen's attorney Katherine Siegfried then asked Ms. Nguyen about the frequency of her back pain.[122] She said that the pain was triggered by stress or by sitting or standing for too long,

---

[110] AR 68.

[111] *Id.*

[112] AR 69.

[113] *Id.*

[114] AR 70.

[115] AR 72.

[116] AR 70.

[117] *Id.*

[118] *Id.*

[119] AR 72.

[120] *Id.*

[121] AR 74.

[122] AR 75.

United States District Court
Northern District of California

and that it affected her ability to concentrate on and remember things.[123] Ms. Siegfried asked if Ms. Nguyen ever experienced depression and anxiety.[124] Ms. Nguyen said that she felt depressed during "any down time [she] had" and had experienced depression since before she worked at Walmart.[125] She stated that she sometimes felt anxiety throughout the day, and that her anxiety would be triggered by certain smells, colors, and images of guns.[126] She occasionally has panic attacks.[127]

Ms. Siegfried asked whether she had any help at her nanny job.[128] Ms. Nguyen replied that she needed help lifting and moving the children.[129] She can sit for only 45 minutes before having to stand up or reposition herself and could stand for only two to five minutes before "feeling a strain."[130] Ms. Nguyen said that she needed some type of income to get medical treatment, she was without health insurance, and she was in debt to her chiropractor and acupuncturist.[131]

### 2.3  Kenneth Nguyen's Testimony

Ms. Nguyen's brother, Kenneth Nguyen, testified at the October 2014 hearing.[132] Before December 2011, he testified, Ms. Nguyen was a happy, outgoing person; since "the incident happened," she is not the same: she is not as physical as she used to be, and she is "psychologically not all there like we used to have her."[133] She goes to school and does homework, and spends some of her time painting and drawing; he noted that she "draws quite a

United States District Court
Northern District of California

---

[123] Id.
[124] AR 76.
[125] Id.
[126] AR 77.
[127] Id.
[128] AR 78.
[129] Id.
[130] Id.
[131] AR 79.
[132] AR 82.
[133] AR 83.

lot."[134] He testified that Ms. Nguyen lost a lot of friends and rarely saw the friends she had remaining.[135] He keeps in close contact with his sister, they are best friends, and the rest of their family had little contact with her due to "family problems."[136] He said that she required help with chores such as preparing food and was unable to stand for long before needing to lie down on the floor to stretch her back.[137]

### 2.4  Vocational Expert Testimony

Vocational expert ("VE") Corrine Porter testified at the October 2014 hearing.[138] The VE first asked Ms. Nguyen about her job at Walmart.[139] Ms. Nguyen said that her job as a network operations analyst consisted of supporting the website with engineers in her department.[140] The VE then classified Ms. Nguyen's past work, stating that Ms. Nguyen had worked as a sales person for women's apparel, a waitress (informal), a tutor, a flight attendant, and a network control operator.[141] The ALJ asked the VE if Ms. Nguyen had any skills that were transferable to other jobs, and the VE replied that she was in the low range of skills, which included "data entry from the network control" and "teacher's aide at a low semiskilled range from the tutor."[142]

The ALJ posed a hypothetical question to the VE, asking whether an individual of Ms. Nguyen's age, education, and past relevant work experience could perform any of Ms. Nguyen's past work with the following limitations: (1) able to lift 20 pounds occasionally and 10 pounds frequently, and (2) can stand and walk six of eight hours and sit six of eight hours.[143] The VE

---

[134] AR 84.

[135] *Id.*

[136] AR 86.

[137] AR 87–88.

[138] AR 88.

[139] AR 89.

[140] *Id.*

[141] AR 90.

[142] AR 91.

[143] *Id.*

United States District Court
Northern District of California

responded that this hypothetical person would be able to work as a network analyst, tutor, waitress, or salesperson.[144]

The ALJ asked Ms. Nguyen about her earnings in 2012 and 2013.[145] In 2012, Ms. Nguyen received unemployment benefits, and in 2013, her earnings were from the bridal job.[146] The ALJ asked Ms. Nguyen how often she had seen Dr. Navani.[147] Ms. Nguyen saw Dr. Navani "possibly twice" and stopped going because she did not have money, and her insurance denied her claim.[148] The VE then testified about the number of tutor positions and network analyst jobs in the nation and in California.[149]

The ALJ then added to the hypothetical that the person could frequently climb, stoop, bend, kneel and crouch, and asked if said person would still be able to do those jobs.[150] The VE responded, "yes."[151] The ALJ then altered the hypothetical so that the person could lift 15 pounds at most, could bend and twist at the waist occasionally, and could do overhead work with the arms occasionally.[152] The VE responded, "No. Past work is not performable."[153] The ALJ asked whether the person could do other work, and the VE responded that the person could do sedentary work of data entry.[154] The VE also noted the availability of sedentary unskilled positions such as addresser, telephone quotation clerk, or document preparer.[155] The ALJ then added a limitation that the person needed an option to alternate sitting and standing every thirty minutes, with

---

[144] AR 92.

[145] Id.

[146] Id.

[147] AR 93.

[148] Id.

[149] AR 93–94.

[150] AR 94.

[151] Id.

[152] Id.

[153] Id.

[154] AR 96.

[155] Id.

standing breaks that lasted about five to ten minutes.[156] The VE responded that the person would be capable of performing the document preparer and telephone quotation clerk jobs.[157]

Attorney Katherine Siegfried asked whether a person would be able to perform either of those positions if "no contact with the general public" was added to the hypothetical.[158] The VE responded that the telephone quotation clerk position would not be performable, but the document preparer position would.[159] Ms. Siegfried asked if that position would still be performable if at least two unexcused absences per month were added to the hypothetical.[160] The VE responded that it would, but that any more than two would render it not performable.[161] Ms. Siegfried then asked if a hypothetical individual with concentration or memory issues that would cause them to make mistakes up to 15% of the time would be capable of maintaining the position.[162] The VE responded that the hypothetical person would be unable to maintain employment.[163]

The ALJ asked the VE whether there were any other jobs that the hypothetical person would be able to do with the requirements to avoid contact with the public, occasionally lift 15 pounds, and alternate sitting or standing.[164] The VE responded that positions other than document preparer included tube operator (a mail-sorting position) and surveillance systems monitor.[165]

## 2.5  Administrative Findings

The ALJ held that Ms. Nguyen was not disabled within the meaning of the Social Security Act from December 29, 2011, through the date of the decision.[166]

---

[156] *Id.*

[157] *Id.*

[158] AR 97.

[159] *Id.*

[160] *Id.*

[161] AR 97–98.

[162] AR 98.

[163] AR 99.

[164] *Id.*

[165] AR 99–100.

[166] AR 27.

The ALJ set forth the SSA's five-step evaluation process.[167] At step one, the ALJ must determine whether the individual is engaging in "substantial gainful activity."[168] At step two, the ALJ must determine whether the individual has a "medically determinable impairment" or combination of impairments that is "severe."[169] At step three, the ALJ must determine whether the individual's impairments are severe enough to meet a listed impairment.[170] At step four, the ALJ must determine the individual's "residual functional capacity" and determine whether the individual can perform "past relevant work."[171] At step five, the ALJ must determine whether the individual can perform any other work.[172]

At step one, the ALJ found that Ms. Nguyen had not engaged in substantial gainful activity since the alleged onset date in December 2011, although she noted that there was some ambiguity regarding recent earnings.[173] She found that recent work as a bridal consultant did not rise to the level of substantial gainful activity.[174] She found that it was unclear whether the recent work as a nanny had been performed at substantial gainful activity levels and then proceeded to step two.[175]

At step two, the ALJ found that Ms. Nguyen had the following severe impairments: degenerative disc disease of the cervical and lumbar spine.[176] The ALJ found that because these impairments had more than a minimal effect on her ability to perform work-related activities, they were severe.[177] But the ALJ found that Ms. Nguyen's asthma, anxiety, and depression were not severe impairments because, considered singly or in combination, they either had not lasted a year

---

[167] *Id.*

[168] AR 28.

[169] *Id.*

[170] *Id.*

[171] AR 28–29.

[172] AR 29.

[173] AR 29–30.

[174] AR 30.

[175] *Id.*

[176] *Id.*

[177] *Id.*

United States District Court
Northern District of California

or more or had not caused more than a minimal limitation on Ms. Nguyen's ability to perform basic mental-work activities.[178] The ALJ cited Ms. Nguyen's asthma as an example: it was not a severe impairment because it was controlled with medication.[179]

Ms. Nguyen's attorney alleged that she suffered from severe mental impairments, including anxiety and depression.[180] The ALJ discounted the allegations on several grounds. Ms. Nguyen did not allege disabling mental impairments in her initial or reconsideration disability reports, and in January 2012, denied any depression, hopelessness, or concentration difficulties in the previous two weeks.[181] In June 2012, Dr. Navani "observed that [Ms. Nguyen] had a normal affect, good eye contact, good judgment, and no pressured speech, flight of ideas, or auditory or visual hallucinations."[182] He did not diagnose Ms. Nguyen with any mental impairment.[183] In July 2013, Ms. Nguyen "voiced no complaints of mental problems."[184]

The ALJ noted that Ms. Nguyen sought treatment from March to September 2014 "for a history of sexual assault with residual feelings of anxiety, depression[,] and anger," and also intrusive thoughts, insomnia, distrust of others, paranoia, and loss of concentration and focus.[185] Her trauma therapist Anna Clark "opined that [Ms. Nguyen] would likely have difficulty concentrating and focusing on her work."[186] But Ms. Nguyen did not allege disabling mental impairments in her initial or reconsideration disability reports.[187] (These were in January 2013 and December 2013.)[188] Her "treatment with Ms. Clark overlapped with her work as a nanny," and the

---

[178] *Id.*

[179] *Id.*

[180] *Id.*

[181] *Id.*

[182] *Id.*

[183] *Id.*

[184] *Id.*

[185] *Id.*

[186] *Id.*

[187] *Id.*

[188] *See supra* p. 2.

United States District Court
Northern District of California

letter from her employers gave no indication of her suffering from "paranoia, intrusive thoughts, or loss of concentration or focus."[189] This "demonstrated ability to work without incident from July 2014 to October 2014, undermine[d]" Ms. Clark's opinion, and the ALJ thus gave little weight to it.[190]

In September 2014, Ms. Nguyen's acupuncturist said that Ms. Nguyen's depression and anxiety, in combination with her physical impairments, would frequently disrupt her "attention and concentration and cause her to miss more than 4 days of work monthly."[191] The ALJ gave the opinion little weight because the acupuncturist was not an acceptable medical source and the opinion was outside her expertise.[192]

The ALJ considered the four broad functional areas in the disability regulations in finding that the claimant's symptoms of anxiety and depression were not severe.[193] The four areas are (1) activities of daily living, (2) social functioning, (3) concentration, persistence, and pace, and (4) extended periods of decompression.[194] 20 C.F.R. § 404.1520a(d)(1). Ms. Nguyen had mild limitations for the first three functional areas, and no episodes of decompensation in the fourth.[195]

For activities of daily living, Ms. Nguyen's mild limitations were some difficulties with household chores such as vacuuming and washing dishes, but she attributed those to her back, not mental impairments.[196] Moreover, she worked as a nanny from July 2014 to October 2014 for three children ages 4 to 7, and her responsibilities included grocery shopping.[197] She told

---

[189] AR 30.

[190] AR 31.

[191] *Id.*

[192] *Id.*

[193] *Id.*

[194] AR 31–32.

[195] *Id.*

[196] AR 31.

[197] *Id.*

neurologist Dr. Rana in 2012 that her back pain "comes and goes" and that she could do "all her activities otherwise."[198]

For social functioning, she alleged distrust and paranoia, but her current employers' letter gave no indication of anxiety, paranoia, distrust of others, or intrusive thoughts.[199] Similarly, during her stint at Project Bridal from October 2013 to January 2014, she interacted with clients and management.[200] Since her onset date, she enrolled in college and interacted with professors and other students.[201] She lived with her brother.[202] These social functions were "extensive" and showed that any limitations are minimal.[203]

For the third functional area of concentration, pace, and persistence, her activity since the onset date (including working at Project Bridal) showed an ability to maintain attention and concentration.[204] She draws and paints a lot, completes homework, and visits with family, and she did not exhibit difficulty focusing at the hearing or responding appropriately to questions.[205]

For the fourth functional area, Ms. Nguyen experienced no episodes of extended periods of decompensation.[206] She had no inpatient or outpatient hospitalization for mental-health issues.[207]

The ALJ concluded that the mental impairments were non-severe under 20 C.F.R. § 404.1520a(d)(1).

The ALJ acknowledged that Ms. Nguyen alleged that she had a somatoform disorder but concluded that the record did not support that this was a medically determinable impairment.[208]

---

[198] *Id.*

[199] *Id.*

[200] *Id.*

[201] *Id.*

[202] *Id.*

[203] *Id.*

[204] *Id.*

[205] *Id.*

[206] AR 32.

[207] *Id.*

[208] *Id.*

The January 2012 records showed that diagnosis but it was not clear who made it.[209] A physical therapist signed most notes; she was not an acceptable medical source and lacked expertise for psychological conditions.[210]

At step three, the ALJ found that Ms. Nguyen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the disability regulations.[211] Ms. Nguyen alleged that her impairment met Listings 1.04A and 12.07.[212]

Listing 1.04A requires a disorder of the spine resulting in compromise of a nerve root or of the spinal cord with evidence of nerve root compression (characterized by certain pain or certain motor issues).[213] The ALJ found that Ms. Nguyen did not meet the requirements of Listing 1.04A because there was "no indication that [she] ha[d] spinal arachnoiditis or lumbar spine stenosis resulting in pseudoclaudication or other conditions of sufficient severity to meet listing 1.04B or C."[214]

For listing 12.07, the ALJ found the following:

> For the reasons previously outlined, the claimant also fails to meet the criteria for listing 12.07. I note that she has had only mild limitations in activities of daily living, mild social limitations, and mild limitations in concentration, and no episodes of decompensation of extended duration. Thus, she cannot satisfy the requirements of listing 12.07. Additionally, a somatoform disorder has not been conclusively demonstrated to be one of claimant's medically determinable impairments.[215]

At step four, the ALJ determined that Ms. Nguyen was unable to perform any of her past relevant work.[216]

---

[209] *Id.*

[210] *Id.*

[211] *Id.*

[212] *Id.*

[213] *Id.*

[214] AR 32–33.

[215] AR 33.

[216] AR 38.

At step five, the ALJ found that Ms. Nguyen had the residual functional capacity to perform light work, as defined in the regulations, with limitations of (1) lifting 20 pounds occasionally and 10 pounds frequently, (2) standing and walking for 6 hours in an 8-hour day, (3) sitting for 6 hours in an 8-hour day, and (4) sitting for 30 minutes at a time before needing to stand for 5 to 10 minutes.[217] The ALJ found that Ms. Nguyen could (1) frequently stoop, kneel, crouch, and climb, (2) occasionally bend or twist at the waist, and (3) occasionally do overhead work with her arms.[218]

The ALJ followed a two-step process to determine (1) whether there were "underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [Ms. Nguyen's] pain or other symptoms," and (2) if so, the intensity, persistence, and limiting effect of her symptoms.[219]

The ALJ noted that Ms. Nguyen previously worked as a computer network analyst (a job that required her to sit all day), apparently did not suffer a specific workplace injury, and instead alleged that the cumulative effect of the sitting eventually resulted in severe back pain.[220] She alleged that the pain was unbearable and prevented her from sitting or standing for prolonged periods, walking lengthy distances, and lifting more than 15 pounds, and required her to lie down periodically during the day.[221] She "denied being able to cook full meals or vacuum, but from July 2013 to October 2014, she was working as a nanny for three children," ages 4 to 7.[222]

The ALJ found that Ms. Nguyen's "medically determinable impairments could reasonably be expected to cause some of the symptoms" but her "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely credible."[223]

---

[217] AR 33.

[218] *Id.*

[219] AR 34.

[220] *Id.*

[221] *Id.*

[222] *Id.*

[223] *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The ALJ said that the medical evidence failed "to provide strong support" for Ms. Nguyen's

2 allegations of disabling symptoms and limitations.[224] The 2012 back records showed hospital

3 admission for constant back pain, her complaints of being unable to move, and the MRI and other

4 evidence from January 2012 to February 2012 (discussed above).[225] Dr. Navani examined Ms.

5 Nguyen during the worker's compensation process in May 2012 (again described above); the ALJ

6 described Dr. Navani's opinion as vague because she (1) did not address how long Ms. Nguyen

7 could stand, walk, or sit, (2) did not clarify what he meant by limited bending, twisting, and

8 overhead reaching, and (3) summarized the January 2012 MRI incorrectly.[226] The ALJ thus

9 accorded the opinion little weight.[227] He accorded D.O. Hana's March 2014 opinion limited

10 weight because it was part of a worker's compensation process, which involves different rules and

11 regulations than the SSI scheme.[228]

12    The ALJ gave the chiropractor's opinion little weight because she was not an acceptable

13 medical source under the Social Security rules and lacked the expertise of an M.D., and her

14 opinion was inconsistent with the MRI and the claimant's testimony about her daily activities such

15 as swimming and working as a nanny.[229] He gave her opinion about Ms. Nguyen's ability to work

16 no weight because that administrative finding is reserved for the Commissioner.[230] Similarly, the

17 ALJ gave limited weight to the acupuncturist's opinion because she was not an acceptable medical

18 source, opined limitations more severe than those in the claimant's testimony, addressed mental

19 limitations outside of her expertise, and varied significantly from an opinion she gave six months

20 earlier.[231] The ALJ nonetheless included a limitation for sitting and standing. [232]

21

---

22 [224] *Id.*

23 [225] *Id.*

24 [226] AR 35.

25 [227] *Id.*

26 [228] AR 37.

27 [229] AR 35.

[230] *Id.*

[231] AR 37.

28 [232] *Id.*

Ms. Nguyen consulted Dr. Rana, a neurologist, in July 2012.[233] The ALJ afforded her opinion — that Ms. Nguyen "could sit, stand[,] and walk up to 6 hours in an 8-hour day; carry 10 [pounds] frequently and 20 pounds occasionally; push and pull up to 20 pounds; and frequently stoop, bend, kneel, crouch[,] and climb" — great weight, given her specialty and in neurology and the consistency of her opinion with the MRI findings.[234] The ALJ also gave some weight to the opinions of DDS medical consultants Dr. Payne and Dr. Saphir, but found that Ms. Nguyen was more limited than they had determined.[235]

The ALJ then addressed Ms. Clark's opinion about Ms. Nguyen's mental health.

> The record also contains an opinion from a marriage and family therapy intern, Ms. Clark, who opined in September 2014, that the claimant would probably have difficulty concentrating and focusing on her work and that she is anxious in social situations (Ex. 16F). This is given little weight for several reasons. Ms. Clark is not an acceptable medical source under the Social Security rules and lacks the expertise to evaluate psychological limitations. Also, she was vague about claimant's limitations. As discussed above, the record shows that the claimant does not have a severe psychological impairment. [236]

The ALJ next evaluated Ms. Nguyen's credibility:[237]

> As for the issue of the claimant's credibility, I note that she has made inconsistent statements and that hurts her credibility. Though the claimant has alleged experiencing disabling impairments which prevented her from working after December 29, 2011, at the hearing, she acknowledged that she had worked as a bridal consultant at Bridal Project from October 2013 to January 2014 (Ex. 8D). She testified that she worked between 8 to 25 hours weekly. After the claimant's employment with Bridal Project ended, she admitted looking for other employment and doing volunteer work weekly at church. She also testified that she began working as a nanny in July 2014, work that she was still performing as of October 3, 2014. She testified that she worked only 15 to 20 hours monthly in this position, but her employer stated that she worked up to 40 hours monthly (Ex. 11E).[238] The claimant said that she earned below $920 monthly, but her employer stated that in addition to this income, she received "a stipend for work-related expenses" and "a

---

[233] AR 35.

[234] AR 36.

[235] *Id.*

[236] AR 37.

[237] *Id.*

[238] Ms. Nguyen testified that she worked 15 to 20 hours a week. AR 53.

small advance to help her financially" (Ex. 11E). In this position, she cared for three young children whose ages ranged from 4 to 7.[239]

The ALJ concluded that (1) Ms. Nguyen was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and (2) a finding of "not disabled" was appropriate.[240]

## ANALYSIS

### 1.  Standard of Review

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates the suit within 60 days of the decision. District courts may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotations omitted); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence in the administrative record supports both the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *See id.* at 1039–40; *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).

### 2.  Applicable Law

An SSI claimant is considered disabled if he or she suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[239] AR 37.

[240] AR 39.

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A), (B).

There is a five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520. The five steps are as follows:

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's residual functional capacity ("RFC"), is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2. *See* 20 C.F.R. § 404.1520(a)(4)(v).

For steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can do other kinds of work. *Id.*

### 3.  Application

Ms. Nguyen challenges the ALJ's determination on several grounds: (1) substantial evidence did not justify the ALJ's finding at step two that Ms. Nguyen's mental-health impairments were not severe, and the ALJ erred in her evaluation of "other source" evidence; (2) the ALJ did not have clear and convincing reasons to discredit Ms. Nguyen's testimony; and (3) the ALJ erred by not engaging a psychiatric expert.[241]

### 3.1  No Severe Mental-Health Impairment and "Other Source" Evidence

Ms. Nguyen asserts that by finding that she did not have any severe mental limitations, the ALJ applied a too-strict legal standard at stage two of the five-step analysis.[242] She argues that the step two inquiry "is a *de minimis* screening device to dispose of groundless claims."[243] And, she says, the "record as a whole did not provide the ALJ with substantial evidence to conclude that [—] despite repeated references to mental-health limitations, such as depression, anxiety, [and] Somatoform disorder [—] Ms. Nguyen's mental[-]health conditions caused no more than minimal limitations in work-related functioning."[244]

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290 (1996). The ALJ must consider the record as a whole, including evidence that both supports and detracts from their final decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). An impairment is not severe if it does not significantly limit the claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1521(a).[245] Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting,

---

[241] Motion for Summary Judgment – ECF No. 13 at 6.

[242] *Id.* at 14.

[243] *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

[244] *Id.* (record citations omitted); Reply – ECF No. 17 at 3–4.

[245] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective as of March 27, 2017. The previous version, effective to March 26, 2017, was in effect as of the date of the ALJ's hearing.

pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b).[246] To determine the severity of a mental impairment specifically, the ALJ must consider four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 404.1520a.[247]

The ALJ discounted Ms. Nguyen's allegations of severe mental-health impairments on several grounds. Collectively, they establish error and grounds for remand.

First, the ALJ acknowledged a diagnosis of somatoform disorder in January 2012 but concluded that the record did not support that this was a medically determinable impairment because it was not clear who made the diagnosis.[248] The ALJ noted that a physical therapist — who is not an acceptable medical source and lacked expertise for psychological conditions — signed most notes.[249] But Dr. Chan diagnosed Ms. Nguyen with (among other things) somatization disorder.[250] This mistake prevented the ALJ from giving the appropriate weight to a treating physician's diagnosis.

In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must [also] consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotations omitted)).

Social Security regulations distinguish between three types of physicians: treating physicians; examining physicians; and non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th

---

[246] *See supra* n.245.

[247] *Id.*

[248] AR 32.

[249] *Id.*

[250] AR 448.

Cir. 2001) (citing *Lester*, 81 F.3d at 830); *see also Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (the opinion of a treating physician is generally given the greatest weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual"); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

Accordingly, "[i]n conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Id.* (alteration in original) (internal quotations omitted). If the ALJ finds that the opinion of a treating physician is contradicted, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotations omitted); *see also Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (internal quotations omitted)). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, we will give it controlling weight.").

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social Security] Administration considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (quoting 20 C.F.R. § 404.1527(b)(2)(i)–(ii)) (alteration in original). "Additional factors relevant to evaluating any

United States District Court
Northern District of California

medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion . . . ." *Id.* (citing 20 C.F.R. § 404.1527(d)(3)–(6)). Even if the treating physician's opinion is not entitled to controlling weight, it still is entitled to deference. *See id.* at 632 (citing SSR 96-02p at 4 (Cum. Ed. 1996), 61 Fed. Reg. 34,490, 34,491 (July 2, 1996)). Indeed, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.* (quoting SSR 96-02p at 4).

Finally, an "ALJ errs when he rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13.

Here, the ALJ's record error prevented this analysis. Moreover, based on her discounting of the source, she did not consider the somatization disorder at all. Other courts have held that an ALJ's failure to consider a somatization disorder is reversible error.

Somatoform disorders are "characterized by somatic symptoms that are either very distressing or result in significant disruption of functioning, as well as excessive and disproportionate thoughts, feelings[,] and behaviors regarding those symptoms."[251] "[S]omatoform and somatization disorders also are characterized by the absence of objective physical findings to explain a patient's subjective complaints." *King v. Barnhart*, No. C 03-0835 MJJ, 2004 WL 1949497, at *3 (N.D. Cal. Aug. 16, 2004). A somatoform disorder is potentially disabling and can be a severe impairment. *Blevins v. Colvin*, No. 12-CV-5493-JRC, 2013 WL 1192403, at *7 (W.D. Wash. Mar. 22, 2013). Moreover, "complaints of pain cannot be dismissed . . . merely because they stem in part from a psychological abnormality[.]" *Id.* at *4.

---

[251] AR 555.

In *Dunn v. Colvin*, the court found "that the ALJ erred [at step two] in failing to consider [the] plaintiff's hypochondriasis diagnosis." No. 13-CV-05088 JRC, 2014 WL 1053273, at *1 (W.D. Wash. Mar. 19, 2014). The ALJ "noted that one psychologist indicated that [the] plaintiff had a possible somatization disorder," but, "[b]ased on the lack of a firm diagnosis of somatization disorder, the ALJ found that it was not a medically determinable impairment." *Id.* at *3. An examining psychologist, however, had diagnosed the plaintiff with hypochondriasis, "which is a type of somatoform disorder." *Id.* The court found that the ALJ erred by failing to consider this diagnosis and directed the ALJ to reconsider it on remand "to determine whether [the] plaintiff's hypochondriasis is severe." *Id.*

Similarly, in *Blevins v. Colvin*, the court found that the ALJ had erred by failing to include a "'detailed and thorough summary of the facts and conflicting clinical evidence' regarding [the] plaintiff's somatoform pain disorder." 2013 WL 1192403 at *7. An examining psychologist "diagnosed the plaintiff with somatoform pain disorder secondary to physical and psychological factors." *Id.* at *4. The ALJ found that the psychologist "was able to review records up to January 2007 only" and assigned the opinion "only minimal weight." *Id.* In making this determination, the ALJ relied on a typographical error. *Id.* The court found that "[t]his reason was the only reason provided by the ALJ when he rejected the opinions of [the psychologist]," and that "as this finding is not supported by substantial evidence in the record as a whole, and based on the relevant record . . . the ALJ erred in his review of the medical evidence." *Id.* at *6.

Here, as in *Dunn* and *Blevins*, the ALJ's misreading of the record resulted in the ALJ improperly ignoring Ms. Nguyen's somatization disorder diagnosis.[252] "[It is] legal error where the ALJ's findings completely ignore medical evidence without giving specific, legitimate reasons for doing so." *Smolen*, 80 F.3d at 1282.

Second, a compounding effect of this error meant that ALJ did not consider the medical record as a whole, including this evidence in the context of diagnoses of depression and anxiety starting in January 2012. *See Reddick*, 157 F.3d at 720.

---

[252] AR 32.

United States District Court
Northern District of California

1    Third, a related point is that the ALJ gave little weight to "other source" evidence. For

2    example, she gave little weight to Ms. Nguyen's therapist Anna Clark — who treated her for

3    sexual assault — on the ground that she was not an "acceptable medical source."[253] Similarly, the

4    ALJ discounted evidence from her chiropractor and acupuncturist, and she did not consider Ms.

5    Nguyen's brother's testimony about her mental health at all.[254]

6    "Only physicians and certain other qualified specialists are considered '[a]cceptable medical

7    sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original) (citing

8    *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)); *see also* 20 C.F.R. § 404.1513(a).

9    Chiropractors and therapists are considered "other sources." *See* 20 C.F.R. § 404.1513(d)(1).[255] So

10   too are educational personnel (such as teachers, counselors, early-intervention team members, and

11   daycare workers) and social-welfare personnel. *Id.* § 404.153(d)(2)–(3). Other sources include

12   spouses, parents, siblings, other caregivers, other relatives, friends, neighbors, and clergy. *Id.*

13   § 404.153(d)(4). "While their opinions must still be evaluated, 20 C.F.R. § 404.1527(c), the ALJ

14   may discount testimony from these 'other sources' if the ALJ gives reasons germane to each

15   witness for doing so." *Ghanim*, 763 F.3d at 1161 (internal quotations omitted); *see also Molina*,

16   674 F.3d at 1111–12; 20 C.F.R. §§ 404.1513, 416.913; SSR 06-03p, *available at* 2006 WL

17   2329939 ("[A]n opinion from a medical source who is not an 'acceptable medical source' may

18   outweigh the opinion of an 'acceptable medical source."); *Greger v. Barnhart*, 464 F.3d 968, 972

19   (9th Cir. 2006) (ALJ must take into account lay testimony but may discount that testimony by

20   providing reasons germane to that witness).

21   Here, the ALJ discounted Ms. Clark's opinion because (i) Ms. Clark was not an "acceptable

22   medical source" and (ii) the opinion was — essentially — inconsistent with the fact that Ms.

23   Nguyen worked as a nanny during the period without incident, and her employer's letter did not

24   show the asserted issues.[256] The first reason, while accurate, is circular and not a "germane" reason

25   _____

26   [253] AR 36.

     [254] AR 35–37.

27   [255] *See supra* n.245.

28   [256] AR 37.

1    to discount such evidence. *See Haagenson v. Colvin*, 656 F. App'x. 800, 802 (9th Cir. 2016)

2    (holding that the ALJ failed to provide a germane reason for rejecting "other source" opinion

3    evidence when "[t]he only reason that the ALJ offered for rejecting their opinions is that they are

4    not 'acceptable medical sources' within the meaning of the federal regulation . . . [because] the

5    regulation already presumes that nurses and counselors are non-acceptable medical sources, yet

6    still requires the ALJ to consider them as 'other sources'"). The ALJ's second reason for rejecting

7    the "other source" opinion also is insufficient. While inconsistency with objective evidence is a

8    germane reason to reject "other source" evidence, *see Molina*, 674 F.3d at 1111–12, here, the ALJ

9    did not cite specific inconsistencies between the opinion about Ms. Nguyen's mental health and

10   Ms. Nguyen's "daily functioning" at her part-time job as a nanny.[257] *See Ghanim*, 763 F.3d at

11   1162; *see also Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (the reasons for rejecting

12   other source witness testimony must be "germane" and "must be specific").

13        Similarly, the ALJ discounted reports about Ms. Nguyen's mental state by her chiropractor and

14   acupuncturist because their opinions were outside their expertise and were inconsistent with Ms.

15   Nguyen's part-time work.[258] But lay opinions are relevant, and the ALJ did not specify how the

16   opinions were inconsistent with part-time work. Similarly, the ALJ cited Ms. Nguyen's ability to

17   live with her brother, visit family, draw, take community college courses, and do homework as

18   evidence of her ability to function socially and maintain concentration, persistence, and pace.[259]

19   But she did not address the brother's testimony about his sister's psychological state[260] and thus

20   did not provide germane or specific reasons for rejecting it. She also did not specify how the daily

21   activities were inconsistent with the allegations regarding her mental health. And the record does

22   provide a basis for reaching this conclusion.

23        While a claimant's daily activities may provide a specific and legitimate basis for a finding of

24   inconsistency with her disabling conditions, *see Molina*, 674 F.3d at 1113; *Curry v. Sullivan*, 925

---

[257] *Id.*

[258] AR 36–37.

[259] AR 31.

[260] AR 83–84, 88.

United States District Court
Northern District of California

F.2d 1127, 1130 (9th Cir. 1991), the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain," and thus with eligibility for disability benefits. *Garrison*, 759 F.3d at 1016. In *Garrison*, the Court recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, finding that "only if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on her credibility." *Id.* (alterations in original) (internal quotations omitted); *see also Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

The ALJ also noted that Ms. Nguyen did not exhibit any difficulty focusing at the hearing or responding to questions.[261] The Ninth Circuit has repeatedly rejected the ALJ's denial of benefits "based on the ALJ's observation of [the claimant], when [the claimant's] statements . . . are supported by objective evidence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (the court "condemned" "[t]he ALJ's reliance on his personal observations . . . at the hearing," characterizing it "as 'sit and squirm' jurisprudence") (quoting *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)). The ALJ's observations of Ms. Nguyen's "lack of difficulty" during the approximately 70-minute long hearing[262] is not "clear and convincing" evidence supporting the ALJ's adverse credibility finding, particularly where her testimony and the record suggests that her symptoms were intermittent.[263] *See Perminter*, 765 F.2d at 872; *Garrison*, 759 F.3d at 1014–15; *see also Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (even when claimant alleges

---

[261] AR 31.

[262] AR 49 & 101 (start and end times of the hearing).

[263] *See, e.g.*, AR 108.

constant pain, "[t]he fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible.").

Here, the ALJ did not engage in the necessary specific analysis of any inconsistencies between the severity of Ms. Nguyen's reported mental-health limitations and her daily activities to enable appropriate review. Moreover, the ALJ's record error about the somatoform diagnosis meant that ALJ did not consider the record as a whole. *See Reddick*, 157 F.3d at 720. These errors require remand.

### 3.2  Ms. Nguyen's Testimony

In assessing a claimant's credibility, an ALJ must make two determinations. *Garrison*, 759 F.3d at 1014. "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (internal quotations omitted)). Second, if the claimant has produced that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* at 1014–15 (quoting *Smolen*, 80 F.3d at 1281). In order to have meaningful appellate review, the ALJ must explain its reasoning and "*specifically identify* the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102, 1103 (9th Cir. 2014) ("Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing.") (internal quotations omitted). "That means '[g]eneral findings are insufficient.'" *Id.* at 1102 (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.") (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). Moreover, the court will "review

United States District Court
Northern District of California

1    only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

2    on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

3        In *Dunn*, the plaintiff argued that the ALJ had erred in considering whether he had exaggerated

4    his symptoms and whether objective medical evidence supported his allegations in forming his

5    credibility determination, because he had ignored the diagnosis of a somatoform disorder that "by

6    definition, requires physical symptoms that are not fully explained by a medical condition." 2014

7    WL 1053273 at *4 (internal quotations omitted). The court found that "the ALJ overlooked a

8    hypochrondriasis diagnosis and failed to address whether this disorder could have explained the

9    lack of objective medical support for plaintiff's complaints" and held that "[o]n remand, the ALJ

10   shall reconsider her credibility findings in light of her assessment of plaintiff's hypochondriasis

11   diagnosis and symptoms." *Id.*

12       Here, the ALJ discounted Ms. Nguyen's testimony about her impairments because she found

13   them inconsistent with her part-time work as a nanny and her daily activities.[264] As discussed in

14   the last section, the ALJ overlooked Dr. Chan's diagnosis of somatization disorder (by definition

15   characterized by the absence of objective physical findings to explain a patient's subjective

16   complaints, *see King*, 2004 WL 1949497 at *3). Evaluating a claimant's credibility turns in part

17   on the assessment of the medical evidence, including Dr. Chan's diagnosis. *See* 20 C.F.R.

18   § 404.1529(c). The failure to consider the diagnosis "infected the ALJ's assessment of the

19   plaintiff's credibility." *Dunn*, 2014 WL 1053273 at *1. Ms. Nguyen's ability to engage in some

20   daily activities, including part-time work, is not on this record specific or germane. The result is

21   that the ALJ did not consider the entire record when evaluating Ms. Nguyen's credibility.

22   Moreover, the ALJ did not identify the specific portions of Ms. Nguyen's testimony that he found

23   not fully credible and explain why they were not credible with "specific, clear and convincing

24   evidence." *Garrison*, 759 F.3d at 1014–15; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

25   2001); *see also* 42 U.S.C. § 405(b)(1) (noting the ALJ's responsibility to provide "a discussion of

26   the evidence"). This is error, and remand is appropriate.

27

28   _____
[264] AR 37.

### 3.3  Developing the Record

Ms. Nguyen argues that the ALJ failed to retain an expert to evaluate ambiguous evidence and resolve inconsistencies in the record.[265] The Commissioner responds that the duty is triggered only when the evidence is ambiguous or inadequate to allow evaluation of the evidence.[266]

The "ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotations omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (internal quotations omitted). The "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). When there is conflicting medical evidence, it is the ALJ's role to determine credibility and resolve the conflict. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ likewise is responsible for resolving ambiguities. *Id.*

Given that the ALJ did not consider Dr. Chan's diagnosis under the "treating physician standard," the court cannot say that the ALJ had a duty to call a medical expert to resolve (for example) any differences in opinion between Dr. Rana and Dr. Navani. [267] Moreover, given that the diagnosis affects the ALJ's assessment of "other source" evidence and Ms. Nguyen's testimony, remand is appropriate. The ALJ can assess on remand whatever steps it needs to resolve any conflicts in the record, including any medical or psychological expert.

---

[265] Motion for Summary Judgment – ECF No. 13 at 20.

[266] Cross-Motion for Summary Judgment – ECF No. 16 at 13 (citing *Mayes v. Massanari*, 276 F.3d 453, 450–60 (9th Cir. 2001)).

[267] Motion for Summary Judgment – ECF No. 16 at 21.

1

## CONCLUSION

2      The court grants Ms. Nguyen's motion for summary judgment, denies the Commissioner's

3   cross-motion for summary judgment, and remands the case for further proceedings.

4      **IT IS SO ORDERED.**

5      Dated: March 31, 2017

6

7      LAUREL BEELER
       United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28